UNITED STATES DISTRICT COURT
Northern District of Illinois
Eastern Division

MHN

Rodney Patton

    v.

WILVES HARRIS

08 CV 1975

**FILED**

5-9-2008

MAY - 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## Notice of Appeal

Notice is hereby given that Rodney Patton, Plaintiff in the above named case, Appeals from the judgment entered on April 10th, 2008.

Dated this 7th day of May, 2008

Signed: Rodney Patton

                Appellant

Rodney Patton N-90674
P.O. Box 112
Joliet, Illinois 60434-0112

United States Court of Appeals
for the 7th Circuit

Rodney Patten

v.

Walvis Harris

08 CV 1975

# Appeal

This is an appeal from a judgment by the District Court, the Honorable Milton I. Shador, denying the Plaintiffs complaint for failure to state a claim. The Plaintiff filed a Motion to reconsider basing the reconsideration on Information the Plaintiff received after the Plaintiff complaint was filed. The Plaintiff feels that the Honorable Milton I. Shador misunderstood the Plaintiff complaint/Motion, and when the Plaintiff seek to amend the complaint it should have been granted. The Plaintiff will not waste the court time on this matter but will present the main issue in the Plaintiff complaint.

The Plaintiff ask the Court of Appeals to reverse the judgment entered with direction to allow the Plaintiff leave to amend my complaint.

For the following reasons this Appeal should be granted:

1

Defendant Harris wrote an disciplinary report (Exhibit A) in which he failed to provide exonerating information (Exhibit F) which that would have cleared the Plaintiff based on information he had at the time he wrote the disciplinary report. (Exhibit F) The Plaintiff states that under Section 504.30 of the Code of Corrections my Constitutional rights to due process were denied by Defendant Harris. Section 504.30 reads in full that "504.30 D(4)(5) The disciplinary report must be fully completed. The reporting employee shall provide the following information to the extent known or available, ...(4) A written statement of the conduct observed,... (5) The names of offenders, employees, and visitors who were witnesses. The identity of witness may be withheld for reasons of security provided a statement to the effect and the information the confidential source provided are provided on the disciplinary report to the extent the information can be included without jeopardizing security." Under this section Defendant Harris violated my constitutional rights to due process by not giving a full account (Exhibit F) of the events that took place before he wrote the disciplinary report (Exhibit A) when he had knowledge and knew

2

that failure to state such would result in the Plaintiff not receiving a fair hearing.

Secondly the Plaintiff complain that the test (uronalysis) was conducted incorrectly as outline in (exhibit B) the Plaintiff statement given to the Adjustment committee. Defendant Harris failure to Administer the urine test correctly resulted in a false positive reading when Defendant Harris poured the Plaintiff first sample in the toilet. A new test cup was to be provided as out line in (exhibit H) the manual provided by the manufacture. Defendant Harris failure to also know that once the test was activated and there was not enough urine or in this case the removal of my urine would cause the test to fail. Defendant Harris training to follow procedure as recommend by the manufacture cause the plaintiff constitutional rights to due process to yet again to be violated.

Defendant Harris signed a statement written by the Plaintiff in which Defendant Harris wrote "I validate the statement" (exhibit F) The failure to include this information in the disciplinary report and the failure to Administer the urine test correctly violates the plaintiff due process right And the Plaintiff should have been granted leave to Amend my complaint base

3

on the information provided.

The Plaintiff further states that at the time the complaint was being screen I did not have this information (exhibit H), but in my Motion for reconsideration I ask the District Court to Allow me leave to Amend my complaint.

The Plaintiff filed with the District Court a motion for reconsideration and my Motion was not heard. The Plaintiff had 10 days to file my Motion for reconsideration before the Court And the Plaintiff motion was Dated April 17, 2008, And the Clerk stamp it received April 21, 2008, the Plaintiff then sent in Another Notice to the Court to be heard, but no Answer at the time of the Appeal.

The Plaintiff ask the court of Appeals to review the Plaintiff claim, And Allow the Plaintiff leave to Amend.

Respectfully Submitted,

Appeal Dated May 7, 2008

4

State of Illinois - - Department of Corrections
**DISCIPLINARY REPORT**
Page __1__ of __1__

☑ Disciplinary Report __10-4-07__
Date
☐ Investigative Report _____
Date

Committed Person: __PATTON__   No. __N90674__   Facility: __STATEVILLE C.C.__

Observation Date: __10-4-07__   Time: __12:50 p__   ☎ Location: __F-HSE__

__Wilvis   Harris__          __W. Nown   10-4-07   1:00 p__
PRINT Employee's Name              Employee's Signature/Date/Time

Offense: 504 Ⓐ  __203   Drugs   and   Drug   ParaPhenalia__
         Ⓑ
         Ⓒ

Observation: __On   the   above   date   And   approximate   time,   This   R/o__
__Ordered   inmate   PATTON   N90674   to   Provide   a   urine   sample__
__For   the   Purpose   Of   a   Drug   test.   The   urine   sample   inmate__
__PATTON   N90674   supplied   was   tested   directly   in   A   Quick   screen 5__
__test   Cup,   which   displayed   a   Positive   detection   OF   Amphetamines.__

                              __- End   Report-__

Witnesses, if any: _____

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons: _____

__(T)  Frank__                    __N Frank   10/04/0__
PRINT Name                        Shift Supervisor's Signature and Date
                                  (For Community Correctional Centers, Chief Adm. Off.)

☑ Confinement Reviewed by Reviewing Officer   Comment:
__Major P. Hinton__                           __10-5-07__
PRINT Name                                    Signature/Date

☑ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit
__Major P. Hinton__                          __10-5-07__
PRINT Name                                   Reviewing Officer's Signature and Date

☑ Reviewed by Hearing Investigator:   __A. F. Meier__   __10-5-07__
(Adult Division Major Reports Only)   PRINT Name          Signature and Date

### PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

                                              Committed Person Refused to Sign ☑

_____
Committed Person's Signature and Number

__B. Westerhausen  #2538__   __B N____    __10-8-07   8:10 AM__   ☐am
PRINT Serving Employee's Name   Serving Employee's Signature   Date and Time Served   ☑pm

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.   __EXHIBIT A__

Offense Date:

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| Name: PATTON, RODNEY | | IDOC Number: N90674 | Race: BLK |
| Hearing Date/Time: 10/9/2007  09:40 AM | | Living Unit: STA-F-01-15 | Orientation Status: N/A |
| Incident Number: 200701847/1 - STA | | Status: Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/4/2007 | 200701847/1-STA | HARRIS J, NATHAN A | F HOUSE | 12:50 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 203 | Drugs & Drug Paraphernalia | Guilty |
| | *Comments:TESTED POSITIVE FOR AMPHETAMINES* | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS

Inmate was present when ticket was read.  Inmate stated he was given drug test, but claims test was administered in correctly.  Inmate stated he initially gave inadequate sample (urine).  Inmate stated officer threw out sample.  Inmate stated he was later given same cup again, not a new cup.  Inmate stated he contends that first sample began the drug test activating cup, causing false reading.  Inmate stated he is prescribed back pain medication.  Inmate stated he denies ever using amphetamines.

## BASIS FOR DECISION

OTS shows inmate assigned to F-house on reported day.  Inmate was ID by state issued ID card.  Staff was giving Inmate Patton N-90674 a drug test.  Staff observed inmate Patton receive on 8 ounce cup of water at 12:30pm.  Staff observed inmate Patton provided a sample of urine for the drug test.  Staff used a Quick screen 5 test cup, which displayed a positive test for amphetamines.  All IDOC protocol was followed during the drug test.  Attached is a copy of DOC0300 show a positive test.  Restitution is request for the test cup, at a cost of $7.88.  Committee stands by report as written.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 6 Months C Grade | 6 Months C Grade |
| 6 Months Segregation | 6 Months Segregation |
| Revoke GCC or SGT 6 Months | Revoke GCC or SGT 6 Months |
| Restitution of $ 7.88 Paid to IDOC | Restitution of $ 7.88 Paid to IDOC |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| 6 Months Commissary Restriction | 6 Months Commissary Restriction |
| **Basis for Discipline:positive drug test** | |

## Signatures
### Hearing Committee

| | | Date | Race |
|---|---|---|---|
| EDWARDS, DARRYL M  - Chair Person | Signature | 10/09/07 | BLK |
| CLEVENGER, TIMOTHY W | Signature | 10/09/07 | WHI |

Recommended Action Approved

---

**Final Comments:** N/A

Exhibit B

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

**Name:** PATTON, RODNEY          **IDOC Number:** N90674          **Race:** BLK

**Hearing Date/Time:** 10/9/2007  09:40 AM          **Living Unit:** STA-F-01-15          **Orientation Status:** N/A

**Incident Number:** 200701847/1 - STA          **Status:** Final

---

TERRY L MCCANN / TLM  10/12/2007                          _10/12/07_

**Chief Administrative Officer**                    **Signature**                    **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504; Subpart F.

**Employee Serving Copy to Committed Person**                    **When Served - - Date and Time**

On 10-4-07 C/O W. Harris gave me a test cup for a urine sample, my first sample wasnt enough, and C/O W. Harris poured this sample in the toilet. I put (RP) on the test, and requested another test cup. C/O W. Harris gave me water while I waited. C/O W. Harris came back when I was ready, and I gave another sample, after this sample I notice the (RP) on the test cup, and ask C/O W. Harris what happen to the new test cup. C/O W. Harris stated that he was told by LT. D. Johnson of Internal Affairs not to give me another test cup. C/O W. Harris then wrote me up, and I was placed in Seg. This statement was sign by both parties on March 6, 2008.

I validate the statement.

_W. Harris_
C/O W. HARRIS

_Rodney Patton_ N9067
Rodney Patton

↑NOTE This statement goes with Grievance #1266
Disp. report written on 10-4-07

Exhibit F

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

# QuickScreen™ Cup Multi Drug Screening Test
### Catalog # 9177X-25
### Test Instructions

## Intended Use

The QuickScreen™ Cup Multi-Drug Screening Test is a rapid, self-timed, qualitative immunoassay for the detection of drugs of abuse in urine. The cutoff concentrations for this test are PCP at 25 ng/mL, Amphetamine at 1000 ng/mL, THC metabolite (THCA) at 50 ng/mL, Cocaine metabolite (Benzoylecgonine) at 300 ng/mL and Opiates at 2,000 ng/mL. This assay is intended for professional use.

This test provides only a preliminary test result. A more specific alternate testing method must be used in order to obtain a confirmed analytical result. Gas chromatography / mass spectrometry (GC/MS) is the preferred confirmatory method. Other chemical confirmation methods are available. Clinical consideration and professional judgment should be applied to any drug of abuse test result, particularly when preliminary positive results are observed.

## Summary & Explanation of the Test

Phencyclidine, also known as "Angel Dust" or PCP, is used primarily as a recreational drug for its hallucinogenic effects. Commonly eaten, inhaled, smoked or injected, it is well absorbed by all routes of administration, concentrating fastest in fatty tissues and in the brain. Unchanged PCP is excreted in the urine in moderate amounts (10% of the dose). The terminal half-life for PCP varies considerably, ranging from 8 to 55 hours, averaging 18 hours. The effects of this drug are unpredictable and variable. Users may exhibit signs of euphoria, anxiety, relaxation, increased strength, time and space distortions, panic and hallucination.

Amphetamine (AMP) and its metabolites are central nervous system stimulants whose pharmacological properties include alertness, wakefulness, increased energy, reduced hunger and an overall feeling of well being. Large doses and extended usage can result in higher tolerance levels and physiological dependency. Both d and l forms of Amphetamine are considered substances.

d⁰-Tetrahydrocannabinol (THC) is generally accepted to be the principle active component in marijuana and hashish, although other cannabinoids contribute to their physiological activity. THC is rapidly absorbed by inhalation and by the gastrointestinal tract, and is almost completely metabolized. Its predominant metabolite, 11-Nor-d⁹-THC-9-carboxylic Acid, or THCA, is found in the plasma, faces and urine along with other compounds. Low concentrations of THC may be detected in urine during the initial several hours, but THCA persists in urine at a detectable concentration for many days after smoking.

Cocaine (COC) is an alkaloid present in coca leaves (Erythroxylon coca) whose pharmacological properties include alertness, wakefulness, increased energy and an overall feeling of euphoria. Cocaine has been used medicinally as a local anesthetic, however, its addictive properties have minimized its modern value as an anesthetic. Elimination of cocaine is predominantly controlled by its biotransformation. It is almost completely metabolized to Benzoylecgonine. Very low concentrations of Cocaine may be de-

---

tected in urine during the initial several hours, but Benzoylecgonine persists in urine at a detectable concentrations for 48 hrs.

Opiates (OPI 2000) are addictive, pain-relieving narcotic drugs derived from the opium poppy (Papaver somniferum). An opiate is any natural or synthetic drug derived from this plant that has morphine-like pharmacological actions. Natural opiates include Codeine, Morphine and Thebaine. Synthetic opiates include Heroin, Hydrocodeine and Levorphenol.

Urine based screening tests for drugs of abuse range from complex analytical procedures to simple immunoassay tests. The sensitivity and rapidity of immunoassays have made them the most accepted method of preliminary screening for drugs of abuse in urine. This allows the laboratory to eliminate the large number of negative specimens and focus on the smaller number of initially positive samples.

## Principle of the Procedure

The QuickScreen™ Cup Multi-Drug Screening Test is a competitive immunoassay that is used to screen for the presence of drugs of abuse in urine. It is a chromatographic absorbent device in which drugs or drug metabolites in a sample compete with drug / protein conjugate immobilized on a porous membrane for a limited number of antibody / dye conjugate binding sites. The test device employs a unique combination of monoclonal and polyclonal antibodies to selectively identify drugs of abuse in urine with a high degree of confidence. The test device also contains a self-timer that indicates when test results are ready to be interpreted.

In the procedure, a fresh urine sample is collected directly into the cup. The urine is absorbed into each test panel by capillary action, mixes with the antibody / dye conjugate, and flows across the pre-coated membrane. When sample drug levels are below the target cutoff (the detection sensitivity of the test), antibody / dye conjugate binds to the drug / protein conjugate immobilized in the Test Region (T) of the device. This produces a colored Test Band that, regardless of its intensity, indicates a negative result.

When sample drug levels are at or above the target cutoff, the free drug in the sample binds to the antibody / dye conjugate, preventing the antibody / dye conjugate from binding to the drug / protein conjugate immobilized in the Test Region (T) of the device. This prevents the development of a distinct colored band, indicating a potentially positive sample.

In either case, a colored Control Band is produced in the Control Region (C) by a non-specific antibody-dye / conjugate reaction. This band serves as a built-in quality control device, demonstrating antibody recognition and reactivity as well as confirming that the test is complete.

## Reagents & Materials Supplied

1. 25 "Self-Timed" Test Cups (Cat. # 9177X). Separate test panels for each target drug contain:
   a. Monoclonal anti-drug antibody / colloidal gold conjugate in a protein matrix containing 0.1% sodium azide coated in the sample path
   b. Drug derivative / protein conjugate immobilized as a line in the Test Region (T)
   c. Goat anti-mouse antibody immobilized as a line in the Control Region (C)

2. Directional Insert (Cat. # 9177X-DI)

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

## Warnings & Precautions

1. FOR PROFESSIONAL, IN VITRO DIAGNOSTIC USE ONLY.
2. This method is established using urine only. No other fluid has been evaluated. Urine has the potential to be infectious. Follow Universal Precautions for proper handling and disposal methods.
3. Do not use this kit beyond its expiration date. Do not reuse the Test Device.



## Storage & Handling Requirements

Store at room temperature (15 – 28 °C). Do not freeze. Refer to expiration date for stability.

## Sample Collection & Preparation

A fresh urine sample should be collected in the cup device immediately prior to testing. The urine should be collected to the recommended volume indicated by the "FILL TO HERE" mark on the outside of the cup. Examine the temperature strip within 1 minute after collecting the specimen. The temperature should be between 90 and 100 °F. Samples outside this range may have been adulterated.

## Assay Procedure

### Preparation

1. Confirm that the cup device is at room temperature (15 – 28 °C) before testing.
2. Do not break the seal on the on the lid until you are ready to perform the test.

### Testing

1. Open the foil pouch, remove the test device, remove the cap from the test device and discard the desiccant packets.
2. Have the donor collect his or her urine specimen in the cup to the recommended volume. Make sure that the urine level is at least at the "FILL TO HERE" mark printed on the outside of the cup.
3. Read the test results when indicated (see When to Read Test Results Using the "Timer").

## When to Read Test Results Using the "Timer"

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com



When the "RESULT READY" window is completely filled with red color, or is almost completely covered with red color that reaches the top of the window, the test results are ready to interpret.



When red color becomes clearly visible at the bottom of the "RESULT EXPIRED" window, test results should no longer be interpreted and should not be considered as conclusive.

## Interpretation of Test Results

  

**Negative Test Results For All Drugs Tested**

**Positive Test Results For Amphetamine & THC**

**Invalid Test Results For Cocaine & Opiates**

Negative – A negative result is indicated when two (2) colored bands appear, one in the Control Region (C) and one in the Test Region (T), before any red color appears at the bottom of the "RESULT EXPIRED" window. This result indicates that the target drug is not present or its concentration is below the detection sensitivity of the test panel. Some negative results may appear in as little as 1 minute, and can be fully interpreted as soon as 2 colored bands are visible.

Positive – A positive result is indicated when only one (1) colored band appears in the Control Region (C) and no band appears in the Test Region (T), after a red spot appears at the "RESULT READY" window. This result indicates that the target drug concentration is at or above the detection sensitivity of the test panel. More than one panel may be positive. Potentially positive results can only be reported when a red spot appears in the timer's "RESULT READY" window, and before any red color appears at the bottom of the timer's "RESULT EXPIRED" window.

Invalid – A test result be considered invalid if, after a red spot appears in the "RESULT READY" window and no bands appear or if a band appears in the Test Region (T) without a Control Band. The presence of a Control Band is necessary to confirm assay performance.

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

## Quality Control

An internal procedural control line has been incorporated into the test device to help ensure proper kit performance and reliability. However, the use of external controls is recommended. Positive and negative controls within 25% of the cutoff concentration should produce the expected results. For positive controls, only one (1) colored band will appear in the Control Region (C), and no band will appear in the Test Region (T). For negative controls, two (2) colored bands will appear, one in the Control Region (C) and one in the Test Region (T).

## Limitations of the Procedure

1. It is possible that substances and factors not described in this directional insert may interfere with the test, causing false results (e.g. technical or procedural error).
2. This test has been developed for testing urine samples only. Its performance using other specimens has not been substantiated.
3. Adulterated urine samples may produce erroneous results. Strong oxidizing agents such as bleach (hypochlorite) can oxidize drug analytes. If a sample is suspected of being adulterated, a new sample must be obtained.
4. All preliminary positive results must be confirmed by another method. Gas chromatography/mass spectrometry (GC/MS) is the method of choice to confirm the presence and concentration of a drug in urine.
5. This test is a qualitative screening assay. It is not designed to determine the quantitative concentration of target drugs or the level of intoxication.
6. Because QuickScreen™ is a competitive assay no prozone effect is present.
7. Occasionally, samples containing target drugs below the target drug's cutoff sensitivity for the test may produce a positive result.

## Performance Characteristics

**Sensitivity** – The sensitivity of the QuickScreen™ Pro Multi Drug Screening Test was evaluated at clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent clinical laboratories are reported for overall sensitivity, comparing QuickScreen™ to the Emit II instrument-based immunoassay.

**Specificity** – The specificity of the QuickScreen™ Pro Multi Drug Screening Test was evaluated at clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent clinical laboratories are reported, comparing QuickScreen to the Emit II assay.

5

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

**Accuracy** – The accuracy of the QuickScreen™ Pro Multi Drug Screening Test was evaluated on clinical (urine) samples and compared with a commercially available immunoassay at the cutoff concentrations. In addition, the combined studies of two independent laboratories are reported, comparing Quick-Screen to the Emit II assay.

| Analyte | In-House Study, % Agreement | | | | | Clinical Study, % Agreement | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | PCP | AMP | THC | COC | OPI | PCP | AMP | THC | COC | OPI |
| n = | 167 | 189 | 143 | 164 | 176 | 140 | 124 | 102 | 143 | 151 |
| Sensitivity | 99 | 97.6 | 99 | 100 | >99 | 95 | 98.8 | 98 | 100 | >99 |
| Specificity | 99 | 100 | 99 | 95.9 | >99 | 99 | 100 | 99 | 87.9[1] | >99 |
| Accuracy | 99 | 99.4 | 98 | 98.1 | >99 | 97.9 | 99.2 | >98 | 96.5 | >99 |

[1] Five discrepant results were observed in the Cocaine Clinical Study. The samples were from 3 to 16% below the assay cutoff concentration (271 to 299 ng/mL) and subsequently found positive by GC/MS.

**Precision** – Eight urine pools, ranging in concentration from 0 to 200% of cutoff, were assayed twice a day for 20 days. The results were interpreted individually by two technicians. The inter- and intra-assay coefficients of variation were determined to be less than 3%.

**Cross-Reactivity** – The following structurally related compounds were spiked into normal human urine and found to cross-react in the QuickScreen Pro Multi Drug Screening Test. The results, in µg/mL, are expressed as that amount of compound capable of giving a target equivalent to the target drug at its cutoff concentration. Unless otherwise noted, a blank space indicates no interference was observed when the compound was tested to 100 µg/mL.

| Compound | PCP | AMP | THC | COC | OPI |
|---|---|---|---|---|---|
| 2-Ethylidene-1,5-Dimethyl-3,3-Diphenylpyrrolidine (EDDP) | 25 | | | | |
| Phenmetalline | 0.025 | | | | |
| d-Amphetamine | | 1 | | | |
| dl-Amphetamine + 3,4-methyenedioxymethamphetamine + (±)-p-Phenylethylamine | | 10 | | | |
| d-Amphetamine + Mephentermine + (R)-(+)-α-Ethylphenethylamine | | 100 | | | |
| (±)-3,4-Methylenedioxyamphetamine | | 4.5 | | | |
| d-Phenylethylamine | | 10 | | | |
| Tyramine | | 12.5 | | | |
| 11-Hydroxy-Δ[9]-THC[14] | | | 1 | | |
| 11-Nor-Δ[9]-THC-9-Carboxylic Acid[15] | | | 0.1 | | |
| 11-Nor-Δ[8]-THC-9-Carboxylic Acid[15] + Δ[9,11]-tetrahydrocannabinol | | | 0.05 | | |
| Δ[9]-Tetrahydrocannabinol | | | 100 | | |
| Benzoylecgonine + Cocaine | | | | 0.5 | |
| Metabenzamide | | | | 25 | |
| Procaine + Pyrilamine | | | | 100 | |
| 6-Acetylmorphine + Hydromorphone | | | | | 10 |
| Codeine | | | | | 1 |
| Dihydromorphine[16] + Morphine + Nalorphine | | | | | 2 |
| Heroin[15] + Hydrocodone | | | | | 2.5 |

6

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

| Morphine-3-β-d-Glucuronide | | | | | 5 |
|---|---|---|---|---|---|

[14] A blank space indicates that no cross-reactivity was observed when the compound was tested to 5 µg/mL.
[15] A blank space indicates that no cross-reactivity was observed when the compound was tested to 10 µg/mL.

**Interfering Substances** – The following compounds were spiked into normal human urine and tested for interference with the QuickScreen™ Pro Multi Drug Screening Test. Unless otherwise noted, these compounds were tested to 100 µg/mL with no interference observed.

Acetaminophen + Acetone + N-Acetylprocainamide + Acetylsalicylic Acid (Aspirin) + Albumin + Alprenol + Alprenolol[16] + Amantadine + (±)-Amethopterin + Amikacin + dl-Amitriptylimide + Aminopyrine + Amitriptyline + Amobarbital + Amoxicillin + Ampicillin + Apomorphine + Aprobarbital + (–)-Arterenol + l-Ascorbic Acid (Vitamin C) + Aspartame + dl-Aspartic Acid + dl-Aspartic Acid + Ampamic Acid + Atropine + Barbital + Barbituric Acid + Benzoic Acid + Benzphetamine + Betamethasone + Bilirubin + Bromazepam + Bromocriptine Mesylate + (±)-Brompheniramine + Butabarbital + Butalbital + Caffeine + Camphor + Camphachlor + Cannabinol + Carbamazepine + Cephalexin + Chloramphenicol + Chlordiazepoxide + Chloroquine + (±)-Chlorpheniramine + (±)-Chlorpromazine + Chlorpropamide + Chlorprothixene +

**Interfering Substances, continued**

Chlorprothixene + Cimetidine + Clemastine + Clomipramine + Clonazepam + Clonidine + (–)-Cotinine + Creatinine + Cyclizine + Cyclobenzaprine + Cyclopentolate + Cyproheptadine + (+)-Desoxyephedrine + Desipramine + Dexmethylphenidate + Dextromethorphan + 3,5-Diethylbarbituric Acid + Diflunisal + Digoxin + 4,4'-Diethylaminobenzophenone + Diphenhydramine + Diphenoxylate + 5,5-Diethylhydantoin + Disopyramide + Dopamine + Doxylamine + (±)-Epinephrine + (–)-Ephedrine + (±)-Ephedrine + (±)-Ergonovine + (+)-Ephedrine + (±)-Erythromycin + Hydrocortisone + (±)-Flurazepam + Furosemide + Gentamicin + Guaiacol + Guaifenesin + Hemisuccinate + Haloperidol + (–)-Hydrastine + Hydrochlorothiazide + (±)-Hydromorphone + Hydroxyzine + Ibuprofen + Imipramine + Indole-3-Acetic Acid + Iohexol + Isoxsuprine + Ketamine + Ketoprofen + Labetalol + Levorphanol + Lidocaine + Lidocaine Carbonate + (±)-Lorazepam + Loxitane + Maprotiline + Mazindol + Meclizine + Medroxyprogesterone + Meperidine + Mephentermine + Mephobarbital + Metaproterenol + Methadone + (S)-(+)-Methamphetamine + Methapyrilene + Methaqualone + Methocarbamol + Methoxamine + Methyldopa + Alanine + 3-Methyl-3-(3,4,5-trimethoxyphenyl)-d-Alanine + (±)-3,4-Methylenedioxyamphetamine + Methylphenidate + Methylprylon + (±)-Metoprolol + Nalidixic Acid + Naloxone + Naltrexone + Naphazoline + o-Naphthaleneacetic Acid + β-Naphthaleneacetic Acid + Naproxen + Nefopam + Netilmicin + Niacinamide + Nialamide + Nicotinic Acid + Nifedipine + Nitrazepam + Norfluoxetine + Norketamine + Normorphine[16] + Nortriptyline + Noscapine + Nylidrin + Orphenadrine + Oxalic Acid + Oxazepam + Oxycodone + Oxymetazoline + Papaverine + Penicillin G + Pentazocine + Pentobarbital + Phenacetin + Phencyclidine + Phenobarbital + Phenolphthalein + Phenothiazine + d-Phenylephrine + (±)-Phenylalanine + (±)-Phenylephrine + Phenylpropanolamine + Piroxicam + Potassium Chloride + Prazepam + Prednisolone + Prednisone + Primidone + Probenecid + (±)-Prolintane + Promethazine + Propoxyphene + 3-Propylpentanoic Acid + Propranolol + Pyridoxine + Quinidine + Quinine + Ranitidine + Riboflavin + Salicylic Acid + (–)-Scopolamine + Secobarbital + Sodium Chloride + Sulindac + Temazepam + Terbutaline + Tetracycline + Tetraethylthiuram

7

---

Phamatech, Inc., 9530 Padgett Street, Suite 101   San Diego, CA 92126 USA
(888) 635-5840 Toll- free   (858) 635-5843 fax   Internet: www.phamatech.com

+ Disulfide (Antabuse) + Tetrahydrozoline + Theobine + Theophylline + Thioridazine + α-Thiothixene + Tobramycin + Trimethoprim + Trazodone[16] + Trifluoperazine + Triflupromazine + dl-Trihexyphenidyl + Trimethobenzamide + Trimipramine + Tripelennamine + Tripolidine + Urea + Uric Acid + Vancomycin + (±)-Verapamil + Zomepirac

[15] No interference was observed when the compound was tested to 25 µg/mL.
[16] No interference was observed when the compound was tested to 10 µg/mL.
[16] No interference was observed when the compound was tested to 2.5 µg/mL.

## Bibliography & Suggested References

1. Federal Register, Department of Health and Human Services, Mandatory Guidelines for Federal Workplace Drug Testing Programs 53-69 (1988)
2. Urine Testing for Drugs of Abuse, NIDA Research Monograph 73, (1986)
3. Dugan A., Saldana L., Elissagaray Co., Smith M., Jannasch K., Clinical Chemistry 39:104-108 (1993)
4. Liu R.H., Goldberger B.A., Handbook of Workplace Drug Testing, AACC Press (1995)
5. Jeffcoat A.R., et al, Drug Metabolism and Disposition, 17:2 (1989)
6. Inaba T., Journal of Canadian Physiology and Pharmacology, 67: 1154-57 (1989)
7. Karch S.B., Drug Abuse Handbook, CRC Press (1998)

## QuickScreen™ Cup Multi Drug Screening Test
Catalog # 9177X-25
*FOR IN VITRO DIAGNOSTIC USE ONLY*
For ordering information contact:
**Phamatech, Inc.**
9530 Padgett Street, Suite 101
San Diego, CA 92126
Tel: (858) 635-5840
Fax: (858) 635-5843
Website: www.phamatech.com

9177X-DI, Doc. # 100778, Rev. C, Eff. 01/08/03

8

## SEVENTH CIRCUIT COURT OF APPEALS INFORMATION SHEET

Include the names of all plaintiffs (petitioners) and defendants (respondents) who are parties to the appeal.  Use a separate sheet if needed.

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION DOCKET NUMBER:    08 cv 1975

| PLAINTIFF (Petitioner) | v. | DEFENDANT (Respondent) |
|---|---|---|
| Patton/appellant | | Harris/appellee |

(Use separate sheet for additional counsel)

| PETITIONER'S COUNSEL | | RESPONDENT'S COUNSEL | |
|---|---|---|---|
| Name | Rodney Patton | Name | |
| Firm | pro-se #N90674 | Firm | |
| Address | Stateville - STV P.O. Box 112 Joliet, Il. 60434 | Address | |
| Phone | | Phone | |

| Other Information | | | |
|---|---|---|---|
| District Judge | Shadur | Date Filed in District Court | 4/11/08 |
| Court Reporter | J. Andrews    X-6899 | Date of Judgment | 4/14/08 |
| Nature of Suit Code | 555 | Date of Notice of Appeal | 5/9/08 |

COUNSEL:        Appointed  ☐        Retained  ☐        Pro Se  ☒

FEE STATUS:        Paid  ☐        Due  ☐        IFP  ☒

        IFP Pending  ☐        U.S.  ☐        Waived  ☐

Has Docketing Statement been filed with the District Court Clerk's Office?        Yes  ☐        No  ☒

If State/Federal Habeas Corpus (28 USC 2254/28 USC 2255), was Certificate of Appealability:

        Granted  ☐        Denied  ☐        Pending  ☐

If Certificate of Appealability was granted or denied, date of order: _____

If defendant is in federal custody, please provide U.S. Marshall number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(A).   Rev 04/01**

Order Form (01/2005)

Case 1:08-cv-01975 Document 19 Filed 05/12/2008 Page 13 of 20
Case 1:08-cv-01975 Document 6 Filed 04/10/2008 Page 1 of 1



## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1975 | **DATE** | 4/10/2008 |
| **CASE TITLE** | Rodney Patton vs. Wilvis Harris, et al | | |

**DOCKET ENTRY TEXT**

Enter Memorandum Order. Section 1915A(b) calls for the present dismissal of the Complaint and this action for failure to state a claim upon which Section 1983 relief may be granted, and this Court so orders. Patton's motion for appointment of counsel is denied as moot. (4-1) Finally, if Case No. 07 C 2180 has not met the standards for a third strike under Section 1915(g), this dismissal certainly does so - - so that Patton has not attained the three-strike level under any view of the matter.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

| | | Courtroom Deputy Initials: | SN |
|---|---|---|---|

08C1975 Rodney Patton vs. Wilvis Harris, et al

Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RODNEY PATTON #N-90674, )
)
                    Plaintiff, )
)
    v. ) No. 08 C 1975
)
WILVIS HARRIS, et al., )
)
                    Defendants. )

### MEMORANDUM ORDER

Rodney Patton ("Patton"), who is scarcely a stranger to the federal courts, has just filed another 42 U.S.C. §1983 ("Section 1983") Complaint, making handwritten inserts to the form provided by this District Court's Clerk's Office, as well as tendering an accompanying handwritten Motion for Appointment of Counsel ("Motion"). As for his earlier lawsuits, Complaint ¶III lists only his Case No. 04 C 3933, still pending before this Court's colleague Honorable Robert Gettleman, then goes on to note:

> The Plaintiff does not know all cases brought before the court.

But the "Petitioner Profile Information" that has been supplied to this Court by this District Court's Prisoner Pro Se Staff Attorneys lists no fewer than seven earlier Patton cases in addition to the pending matter before Judge Gettleman, and three of those prior cases may well have triggered the application of 28 U.S.C. §1915(g) to this action:[1]

---

[1] All further references to Title 28's provisions will simply take the form "Section--."

    1.   Each of Case Nos. 94 C 369 and 07 C 1761

constitutes a "strike" for Section 1915(g) purposes.

    2.   In addition, when in Case No. 07 C 2180 Patton

sought to appeal this Court's order of dismissal for failure

to exhaust administrative remedies, this Court certified

under Section 1915(a)(3) that the appeal was filed in bad

faith.   That certification resulted in an order from the

Court of Appeals denying Patton's motion for leave to

proceed in forma pauperis and ordering him to pay the $455

in appellate fees, coupled with a dismissal of the appeal.

Under those circumstances Patton may be precluded by Section

1915(g) from bringing this current action unless he pays the $350

filing fee in full up front.   That alone would call for a

dismissal of the Complaint and this action in the absence of such

payment on or before April 28, 2008.[2]

    But given the possibility that what has been said as to Case

No. 07 C 2180 might not be viewed as a third strike for Section

1915(g) purposes, this Court has engaged in the screening of

Patton's current Complaint called for by Section 1915A(a).   In

that respect it is clear that with Patton's allegations being

accepted as true (as is required for such purposes), he has not

stated a viable (or even a colorable) claim of any violation of

_____

    [2]   That would allow Patton more than the 14-day timetable
that our Court of Appeals granted him in connection with his
attempted appeal in Case No. 07 C 2180.

                                2

his federal <u>constitutional</u> rights--the necessary predicate for Section 1983 relief.

With that being so, Section 1915A(b) calls for the present dismissal of the Complaint and this action for failure to state a claim upon which Section 1983 relief may be granted, and this Court so orders.[3]  Finally, if Case No. 07 C 2180 has not met the standards for a third strike under Section 1915(g), this dismissal certainly does so--so that Patton has now attained the three-strike level under any view of the matter.[4]

Milton I. Shadur
Senior United States District Judge

Date:   April 10, 2008

_____

[3]  This of course compels the denial of Patton's Motion as moot, and this Court orders that as well.

[4]  Meanwhile Patton has not been in compliance with his obligations to pay prior filing fees pursuant to Section 1915. This Court has not troubled itself to obtain docket printouts in all of his cases, but the one that it <u>has</u> obtained (in Case No. 07 C 2180) shows that he still owes whatever unpaid amount remains of the $350 District Court filing fee and of the $455 in Court of Appeals filing fees.  Although that is of course <u>his</u> primary responsibility, a copy of this memorandum order is also being sent to the fiscal authorities at Stateville Correctional Center (where Patton is in custody) as an express reminder of the obligation that Congress has directly imposed on the institution in that respect under Section 1915(b)(2).

3

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Rodney Patton

**JUDGMENT IN A CIVIL CASE**

     v.

Case Number: 08 C 1975

Wilvis Harris

- ☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that final judgment is entered dismissing this action with prejudice pursuant to Fed. R. Civ. P. 58.

Michael W. Dobbins, Clerk of Court

Date: 4/10/2008

/s/ Sandy Newland, Deputy Clerk

APPEAL, NOLAN, TERMED

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 3.1.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:08-cv-01975
## Internal Use Only

| | |
|---|---|
| Patton v. Harris et al | Date Filed: 04/11/2008 |
| Assigned to: Honorable Milton I. Shadur | Date Terminated: 04/11/2008 |
| Cause: 42:1983 Prisoner Civil Rights | Jury Demand: Plaintiff |
| | Nature of Suit: 555 Civil Rights (Prison Condition) |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Rodney Patton**                    represented by **Rodney Patton**
                                                     N-90674
                                                     Stateville - STV
                                                     P. O. Box 112
                                                     Joliet, IL 60434
                                                     PRO SE

V.

**Defendant**

**Wilvis Harris**

**Defendant**

**Ami Workman**

**Defendant**

**Darryl Johnson**

**Defendant**

**Kajtsa**
*Correctional Officer*

**Defendant**

**Roger E. Walker, Jr.**
*Director*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/07/2008 | 1 | RECEIVED Complaint and five copies by Rodney Patton. (kj, ) (Entered: |

|  |  | 04/09/2008) |
|---|---|---|
| 04/07/2008 | 2 | CIVIL Cover Sheet. (kj, ) (Entered: 04/09/2008) |
| 04/07/2008 | 3 | APPLICATION by Plaintiff Rodney Patton for leave to proceed in forma pauperis. (Exhibits) (kj, ) (Entered: 04/09/2008) |
| 04/07/2008 | 4 | MOTION by Plaintiff Rodney Patton to appoint counsel. (kj, ) (Entered: 04/09/2008) |
| 04/07/2008 | 5 | POST MARKED envelope for initiating document by Rodney Patton (Document not scanned) (aew, ) (Entered: 04/10/2008) |
| 04/10/2008 | 6 | MINUTE entry before Judge Honorable Milton I. Shadur:Enter memorandum order. Section 1915A(b) calls for the present dismissal of the complaint and this action for failure to state a claim upon which Section 1983 relief may be granted, and this court so orders. Patton's motion for appointment of counsel is denied as moot.(4-1) Finally, if Case No. 07cv2180 has not met the standards for a third strike under Section 1915(g), this dismissal certainly does so -- so that Patton has now attained the three-strike level under any view of the matter. mailed notice (vcf, ) Modified on 5/2/2008 (srn, ). (Entered: 04/14/2008) |
| 04/10/2008 | 7 | MEMORANDUM Order Signed by Judge Honorable Milton I. Shadur on 4/10/2008.(vcf, ) (Entered: 04/14/2008) |
| 04/10/2008 | 8 | ENTERED JUDGMENT.(vcf, ) (Entered: 04/14/2008) |
| 04/11/2008 | 9 | MINUTE entry before Judge Honorable Milton I. Shadur: Enter Supplement to Memorandum Order. Plaintiff's application to proceed in forma pauperis is granted. (3-1) Patton is assessed an initial filing fee of $14.17 and the Stateville trust fund officer is to collect that payment and forward it to the Clerk of Court. Monthly payments shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $350.00 filing fee is paid. Mailed notice (vcf, ) (Entered: 04/14/2008) |
| 04/11/2008 | 10 | SUPPLEMENT TO Memorandum Order Signed by Judge Honorable Milton I. Shadur on 4/11/2008.(vcf, ) (Entered: 04/14/2008) |
| 04/14/2008 |  | MAILED Minute order dated 4/11/2008 to Stateville trust fund officer. (vcf, ) (Entered: 04/14/2008) |
| 04/15/2008 | 11 | NOTICE by Rodney Patton of Change of Address. (vcf, ) (Entered: 04/17/2008) |
| 04/21/2008 | 12 | MOTION by Plaintiff Rodney Patton for reconsideration;(Exhibits). (Poor Quality Original- Paper Document on File.) (vcf, ) (Entered: 04/24/2008) |
| 05/01/2008 | 13 | NOTICE to court by Rodney Patton. (vcf, ) (Entered: 05/05/2008) |
| 05/02/2008 | 14 | MINUTE entry before Judge Honorable Milton I. Shadur: Enter Memorandum Order. Patton's motion for reconsideration 12 is denied. (12-1)(Attachment) Mailed notice (vcf, ) (Entered: 05/06/2008) |

| 05/02/2008 | 15 | MEMORANDUM Opinion and Order Signed by Judge Honorable Milton I. Shadur on 5/2/2008.(vcf, ) (Entered: 05/06/2008) |
| 05/09/2008 | 16 | NOTICE of appeal by Rodney Patton regarding orders 7 , 6 , 8 (ifp) (dj, ) (Entered: 05/12/2008) |
| 05/09/2008 | 17 | MOTION by Plaintiff Rodney Patton to continue as a poor person. (dj, ) (Entered: 05/12/2008) |
| 05/12/2008 | 18 | NOTICE of Appeal Due letter sent to counsel of record (dj, ) (Entered: 05/12/2008) |